919 A.2d 1

# PROPERTY AND CASUALTY INSURANCE GUARANTY CORPORATION

v.

## Peter L. YANNI.

**No. 67, Sept. Term, 2006.**

Court of Appeals of Maryland.

March 15, 2007.

Albert J. Mezzanotte, Jr., Anne Talbot Brennan (Whiteford, Taylor & Preston, L.L.P., Towson, on brief), for appellant.

Kelly E. Cook (Martin E. Gerel, Ashcraft & Gerel, LLP, Rockville, on brief), for appellee.

Argued before BELL, C.J., RAKER, *WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

BATTAGLIA, J.

Section 9–727 of the Workers' Compensation Act, codified in the Labor and Employment Article [1] requires that "insurers" or "employers" begin payment of workers' compensation within fifteen days of their award by the Workers' Compensation Commission. If payments are not timely made, Section 9–728 of the Act [2] provides for the assessment of penalties against a delinquent "employer" or "insurer" in progressive percentages of the original award, depending on the number of days the payment is late. Maryland Code (1999), Section 9–728 of the Labor and Employment Article.

In this workers' compensation case, Appellant, the Property and Casualty Insurance Guaranty Corporation ("PCIGC"), was assessed penalties and attorneys' fees by the Workers' Compensation Commission for the late payment of a workers' compensation award to Appellee, Peter L. Yanni, after the workers' compensation insurer to Yanni's employer, Legion Insurance Company, was declared insolvent. We are called upon in this case to determine whether the PCIGC is an

---

[1] Section 9–727 of the Labor and Employment Article, Maryland Code (1999), provides in pertinent part:

**Payment of award.**
The employer or its insurer shall begin paying compensation to the covered employee within 15 days after the later of the date:
(1) an award is made; or
 (2) payment of an award is due.

[2] Section 9–728 of the Labor and Employment Article, Maryland Code (1999), provides in pertinent part:

**Failure to pay award—Penalties.**
(a) *Within 15 days.*—If the Commission finds that an employer or its insurer has failed, without good cause, to begin paying an award within 15 days after the later of the date that the award is issued or the date that payment of the award is due, the Commission shall assess against the employer or its insurer a fine not exceeding 20% of the amount of the payment.
(b) *Within 30 days.*—If the Commission finds that an employer or its insurer has failed, without good cause, to begin paying an award within 30 days after the later of the date that the award is issued or the date that payment of the award is due, the Commission shall assess against the employer or its insurer a fine not exceeding 40% of the amount of payment.

"insurer" and subject to the assessment of penalties under Section 9–728 of the Labor and Employment Article; whether the penalties fall within Section 9–301(d) of the Insurance Article's definition of a "covered claim" which the PCIGC is required to consider; and whether the PCIGC is immune from the assessment of penalties under Section 9–314 of the Insurance Article, Maryland Code (1995, 1997 Repl.Vol.), and Section 5–412 of the Courts and Judicial Proceedings Article (1974, 2002 Repl.Vol.).

We shall hold that the PCIGC is not obligated to pay the late-payment penalties assessed against it by the Workers' Compensation Commission because it is not an "insurer," the penalties do not constitute part of Yanni's "covered claim," and because the PCIGC is immune from the imposition of penalties.

## I. Background

On October 19, 2000, Peter L. Yanni, employed with MTI Technology Corporation ("MTI") as a Customer Service Engineer, sustained an injury when a piece of equipment on which he was working began to fall, causing him to twist and wrench his back, for which he subsequently filed a claim for workers' compensation. MTI was insured for such claims by Legion Insurance Company ("Legion"), which was declared insolvent in July of 2003. PCIGC subsequently assumed responsibility for Yanni's claim.

On September 29, 2004, the Workers' Compensation Commission, after conducting a hearing on Yanni's claim, determined that Yanni had sustained an accidental injury arising out of and in the course of his employment. The Commission awarded Yanni $211.00 in weekly wages, to be paid for 75 weeks, for permanent partial disability, commencing when his temporary total disability terminated.[3] Yanni also was awarded $3,165.00 in attorneys' fees and $528.00 for medical bills.

---

3. In terms of temporary total disability, the Commission stated:
 All lost time was paid at the temporary total disability rate of all lost time; based on an average weekly wage of $1,200.00.

When the PCIGC failed to timely pay the award, Yanni filed issues[4] with the Workers' Compensation Commission, requesting that penalties be assessed against the PCIGC pursuant to Section 9–728 of the Labor and Employment Article, Maryland Code (1991). At the hearing on Yanni's request for penalties, both parties stipulated to the fact that Yanni's workers' compensation award was not paid until November 23, 2004, and the attorneys' fees until November 29, almost sixty days after the issuance of the award. The Commission ordered PCIGC to pay Yanni penalties in the amount of 35% of his workers' compensation award, but did not award additional penalties for the delayed payment of attorneys' fees. Yanni's counsel subsequently wrote the Commission inquiring into whether they had inadvertently neglected to assess that penalty in its Order; the Commission responded by issuing a new Order, "rescinding and annulling" its earlier order and denying Yanni's request for any penalties. Yanni filed a second set of issues with the Commission, again requesting penalties against the PCIGC for the late payment of his award and attorney's fees. A second hearing was held before the Commission, after which the Commission ordered the PCIGC to pay Yanni penalties in the amount of 35% of the original award, plus $500.00 in additional attorneys' fees.

The PCIGC petitioned the Circuit Court for Montgomery County for judicial review of the penalties and subsequently filed a motion for summary judgment, to which Yanni responded by filing a cross-motion for summary judgment. The Circuit Court granted summary judgment to Yanni. The PCIGC noted a timely appeal to the Court of Special Appeals presenting one question for review:

---

**4.** Under the Workers' Compensation Act, employers disputing a claim filed with the Workers' Compensation Commission, or claimants seeking to enforce or modify a workers' compensation award, must file "issues" with the Commission setting forth their demand. *See* Maryland Code (1999), Section 9–713(a)(2) of the Labor and Employment Article. *See also Jung v. Southland Corp.*, 351 Md. 165, 717 A.2d 387 (1998).

Is the property and casualty insurance guaranty corporation subject to the assessment of a fine for late payment of benefits under § 9–728 of the Labor and Employment Article?

Prior to any proceedings in the intermediate appellate court, we issued a writ of certiorari on our own initiative. *Prop. Guaranty v. Yanni*, 394 Md. 479, 906 A.2d 942 (2006).

## II. Analysis

 In this case we are called upon to determine whether the trial judge properly granted summary judgment to Yanni. The entry of summary judgment is governed by Maryland Rule 2–501, which provides in pertinent part that:

> (f) **Entry of judgment.** The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Maryland Rule 2–501(f). We recently explicated the standard of review for the entry of summary judgment in *River Walk Apartments, LLC v. Roger Twigg*, 396 Md. 527, 914 A.2d 770 (2007):

> The question of whether the trial court properly granted summary judgment is a question of law and is subject to *de novo* review on appeal. *Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 450, 910 A.2d 1072, 1079 (2006); *Miller v. Bay City Prop. Owners Ass'n, Inc.*, 393 Md. 620, 632, 903 A.2d 938, 945 (2006), quoting *Myers v. Kayhoe*, 391 Md. 188, 203, 892 A.2d 520, 529 (2006); *Ross v. State Bd. of Elections*, 387 Md. 649, 658, 876 A.2d 692, 697 (2005); *Todd v. MTA*, 373 Md. 149, 154, 816 A.2d 930, 933 (2003); *Beyer v. Morgan State Univ.*, 369 Md. 335, 359, 800 A.2d 707, 721 (2002). If no material facts are in dispute, we must determine whether summary judgment was correctly entered as a matter of law. *Standard Fire Ins. Co.*, 395 Md. at 450, 910 A.2d at 1079; *Ross*, 387 Md. at 659, 876 A.2d at 698; *Todd*, 373 Md. at 155, 816 A.2d at 933; *Beyer*, 369 Md. at 360, 800 A.2d at 721. On appeal from an order entering summary judgment,

we review "only the grounds upon which the trial court relied in granting summary judgment." *Standard Fire,* 395 Md. at 450, 910 A.2d at 1079; *Ross,* 387 Md. at 659, 876 A.2d at 698, quoting *Eid v. Duke,* 373 Md. 2, 10, 816 A.2d 844, 849 (2003), quoting in turn *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001).

*Id.* at 541–42, 914 A.2d at 778.

■■■ The issues before us require us to construe various provisions of the Insurance and the Labor and Employment Articles. In conducting statutory interpretation, our primary goal is always to "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *In re Kaela C.,* 394 Md. 432, 468, 906 A.2d 915, 936 (2006); quoting *General Motors Corp. v. Seay,* 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005) quoting in turn *Davis,* 383 Md. at 605, 861 A.2d at 81; *City of Frederick v. Pickett,* 392 Md. 411, 427, 897 A.2d 228, 237 (2006). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory'." *In re Kaela C.,* 394 Md. at 468, 906 A.2d at 936; *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Kane v. Bd. of Appeals of Prince George's County,* 390 Md. 145, 162, 887 A.2d 1060, 1070 (2005); 468 *Giant Food, Inc. v. Dep't of Labor,* 356 Md. 180, 194, 738 A.2d 856, 860–61, 863 (1999). If that language is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *City of Frederick,* 392 Md. at 427, 897 A.2d at 237; *Davis,* 383 Md. at 605, 861 A.2d at 81. If however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose. *In re Kaela C.,* 394 Md. at 468, 906 A.2d at 936; *Mayor of Oakland,* 392 Md. at 316, 896 A.2d at 1045; *Canaj, Inc. v. Baker and Div. Phase III,* 391 Md.

374, 403, 893 A.2d 1067, 1084 (2006); *Comptroller v. Phillips*, 384 Md. 583, 591, 865 A.2d 590, 594 (2005).

The PCIGC's statutory purpose is "to provide a mechanism for the prompt payment of covered claims under certain [insurance] policies and to avoid financial loss to residents of the State who are claimants or policyholders of an insolvent insurer." Maryland Code (1995, 2003 Repl.Vol.), Section 9–302(1) of the Insurance Article. Created by the General Assembly in 1971 as the Maryland Insurance Guaranty Association, the PCIGC was originally structured as a nonprofit, unincorporated legal entity, emulating a model act proposed in 1969 by the National Association of Insurance Commissioners which was adopted by over forty states. *Ins. Comm'r of State v. Prop. & Cas. Ins. Guar. Corp.*, 313 Md. 518, 522 n. 2, 546 A.2d 458, 460 n. 2 (1988); *A.S. Abell Publishing Co. v. Mezzanote*, 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). In 1986, the General Assembly made substantial changes to the Maryland Insurance Guaranty Association by renaming it the Property and Casualty Insurance Guaranty Corporation, designating it as a nonprofit, nonstock corporation, declaring that it was not an agency or instrumentality of the State, and changing the process for the selection of its Board of Directors. 1986 Md. Laws, Chaps. 161 and 440; *See also Insurance Comm'r of State*, 313 Md. at 522 n. 2, 546 A.2d at 460 n. 2; *A.S. Abell Pub'g Co.*, 297 Md. at 32, 464 A.2d at 1071.

All companies providing direct property and casualty insurance in the State of Maryland, with the exception of companies offering health, mortgage guaranty, and annuities insurance, companies offering insurance written on a surplus lines basis,[5]

---

5. "Surplus lines" insurance refers to

the full amount or kind of insurance needed to protect the interest of the insured that:
(1) cannot be obtained from an authorized insurer; or
(2) for the particular kind and class of insurance to provide coverage against liability of persons described in § 24–206(1) of this article, cannot be obtained from three or more authorized insurers that write that kind and class of insurance on a broad basis.

companies transacting insurance written by a risk retention group,[6] or companies transacting insurance written by an unauthorized insurer,[7] must be a member of the PCIGC in order to transact insurance business in the State. Maryland Code (1995, 2003 Repl.Vol.), Sections 9–303, 9–304(b) and 9–306(d) of the Insurance Article. Each member insurer is assessed an annual fee by the PCIGC to cover its expenses in paying covered claims of insolvent insurance companies. Maryland Code (1995, 2003 Repl.Vol.), Sections 9–304(b) and 9–306(d) of the Insurance Article.

In this case, Yanni contends that the Workers' Compensation Commission rightfully assessed late-payment fees against the PCIGC because it is an "insurer," as the term is used in Section 9–728 of the Labor and Employment Article, as evidenced by Section 9–306(c) of the Insurance Article, which states that it "shall be deemed the insurer to the extent of the Corporation's obligations on the covered claims and, to that extent, shall have the same rights, duties, and obligations that the insolvent insurer would have." Maryland Code (1995, 2003 Repl.Vol.), Section 9–306(c) of the Insurance Article. Yanni further argues our decision in *Uninsured Employers' Fund v. Danner*, 388 Md. 649, 882 A.2d 271 (2005), that the Uninsured Employers' Fund ("UEF")[8] was not an insurer is not persuasive because the PCIGC is a completely different

---

Maryland Code (1995, 2003 Repl.Vol.), Section 1–101(pp) of the Insurance Article.

**6.** A risk retention group is defined as "a corporation or other limited liability association that is formed under the laws of a state, Bermuda, or the Cayman Islands," and "the primary activity of which consists of assuming and spreading all or part of the liability exposure of its group members." Maryland Code (1997, 2003 Repl.Vol.), Section 25–101(j) of the Insurance Article.

**7.** "Unauthorized insurer" means an insurer that does not hold a certificate of authority. Maryland Code (1995, 2003 Repl.Vol.), Section 1–101(rr) of the Insurance Article.

**8.** "The [Uninsured Employers' Fund] was created in 1967 to provide for the payment of workers' compensation awards against uninsured employers." *Workmen's Comp. Comm'n v. Prop. & Cas. Ins. Guar. Corp.*, 319 Md. 1, 3, 570 A.2d 323, 324 (1990).

creature from the UEF—the UEF is a state agency, and its funds are maintained by the State. Yanni also alleges that the PCIGC is an insurer because it is statutorily required to provide workers' compensation insurance. Yanni argues that the PCIGC is obligated to pay the late-payment penalties because they represent a portion of the unpaid obligation for compensation owed by the insolvent insurer. Yanni further maintains that to grant the PCIGC immunity from late-payment penalties is inconsistent with the PCIGC's statutory purpose, citing *Callaghan v. Rhode Island Occupational Info. Coordinating Comm./Indus. Educational,* 704 A.2d 740 (R.I. 1997), which upheld a late-payment penalty against the state's insurers' insolvency fund, despite the fund's immunity against liability, on the ground that the penalty ensured that the fund discharged its obligations in a timely manner. Yanni contends that, such broad immunity would abrogate claimants' right to timely payment and leave them without any alternative remedy.

Conversely, the PCIGC argues that, under our holding in *Danner,* 388 Md. at 649, 882 A.2d at 271, it does not constitute an "insurer" for purposes of Section 9–728 of the Labor and Employment Article. The PCIGC also maintains that, under Section 9–302 of the Insurance Article,[9] it is only permitted to pay "covered claims," which does not include the penalties explicated in Section 9–728 of the Labor and Employment Article. The PCIGC also alleges that it is immune from the assessment of penalties under Section 9–314 of the Insurance Article and 5–412 of the Courts and Judicial Proceedings Article, which grant it immunity from liability, and under

---

**9.** Maryland Code (1995, 2003 Repl.Vol.), Section 9–302 of the Insurance Article provides:

The purposes of this subtitle are:
(1) to provide a mechanism for the prompt payment of covered claims under certain policies and to avoid financial loss to residents of the State who are claimants or policyholders of an insolvent insurer; and
(2) to provide for the assessment of the cost of payments of covered claims and protection among insurers.

Section 9–312 of the Insurance Article, which grants it immunity from taxes.[10]

The PCIGC is statutorily obligated to pay the "covered claims" of insolvent member

insurance companies that amount to more than $100 and less than $300,000, to the extent of the covered claims existing on or before the determination of insolvency or arising:

(i) 30 days after t he determination o f insolvency;

(ii) before the policy expiration date, if that date is less than 30 days after the determination of insolvency; or

(iii) before the insured replaces the policy or causes its cancellation, if the insured does so within 30 days after the determination of insolvency.

Maryland Code (1995, 2003 Repl.Vol.), Sections 9–306(a)(1) & (2) of the Insurance Article. With regards to workers' compensation claims, however, the PCIGC "shall pay the *full amount* of any covered claim *arising out of* a workers' compensation policy." Maryland Code (1995, 2003 Repl.Vol.), Section 9–306(a)(2) of the Insurance Article.

■ In order to execute its statutory duty to assume the "covered claims" of insolvent insurers, the PCIGC is

deemed the insurer to the extent of the Corporation's obligation on the covered claims and, to that extent, shall have the rights, duties, and obligations that the insolvent insurer would have had if the insurer had not become insolvent.

Maryland Code (1995, 2003 Repl.Vol.), Section 9–306(c). One of the obligations of a workers' compensation insurer, such as Legion in the present case, is the prompt payment of an

---

**10.** Because we shall hold that the PCIGC is immune from the assessment of late-payment penalties under Section 9–314 of the Insurance Article and 5–412 of the Courts and Judicial Proceedings Article, we do not reach the issue of whether the penalties constitute taxes and, if so, whether the PCIGC also may be immune under Section 9–312 of the Insurance Article.

award, as required by Section 9–727 of the Labor and Employment Article, which states:

> The employer or its *insurer* shall begin paying compensation to the covered employee within 15 days after the later of the date:
>
> (1) an award is made; or
>
> (2) payment of an award is due.

Maryland Code (1999), Section 9–727 of the Labor and Employment Article. If payments are not timely made, Section 9–728 provides for the assessment of fines:

> (a) *Within 15 days.*—If the Commission finds that an employer or its insurer has failed, without good cause, to begin paying an award within 15 days after the later of the date that the award is issued or the date that payment of the award is due, the Commission shall assess against the employer or its insurer a fine not exceeding 20% of the amount of the payment.
>
> (b) *Within 30 days.*—If the Commission finds that an employer or its insurer has failed, without good cause, to begin paying an award within 30 days after the later of the date that the award is issued or the date that payment of the award is due, the Commission shall assess against the employer or its insurer a fine not exceeding 40% of the amount of payment.

Maryland Code (1999), Section 9–728 of the Labor and Employment Article (emphasis added).

This Court has had occasion to examine what constitutes an "insurer" for purposes of Section 9–728 of the Labor and Employment Article in *Danner*, 388 Md. at 649, 882 A.2d at 271. We began our analysis by noting that, although not defined in Subtitle Seven of the Workers' Compensation Act, "insurer" is defined in other subtitles. *Id.* at 669, 882 A.2d at 283. We looked to the Act's definition of an "authorized insurer" in Subtitle Four as "a stock corporation or mutual association that is authorized under the Insurance Article to provide workers' compensation insurance in the State," quot-

ing Section 9–401(b) of the Labor and Employment Article, and also to the definition of "insurer" in Subtitle Three as:

(i) a stock corporation or mutual association [11] that is authorized under the Insurance Article to provide workers' compensation insurance in the State;

(ii) the Injured Workers' Insurance Fund;

(iv) a governmental self-insurance group [12] that meets the requirements of Title 25, Subtitle 3 of the Insurance Article; or

(v) an individual employer that self-insurers in accordance with § 9–405 of this title.

*Id.,* quoting Section 9–316(a) of the Labor and Employment Article. We held that the Uninsured Employers' Fund was not an "insurer" because it did not fall within any of the enumerated definitions but, was, rather, a state entity that did not operate for profit, as would a mutual association or corporation. *Id.* at 669, 882 A.2d at 283. Thus, it could not be assessed late fees under Section 9–728 of the Insurance Article.

Although Yanni is correct in pointing out that the PCIGC is structurally different from the UEF, it still does not meet the definition of "insurer" provided in the Workers' Compensation Act. The PCIGC is a nonstock, nonprofit corporation, rather than a for-profit stock corporation, mutual association, governmental self-insurance group, or an individual employer that self-insures. Nor is the PCIGC the Injured Workers' Insurance Fund. Further, the PCIGC does not issue workers' compensation insurance policies to employers. Instead, the

---

**11.** A "mutual association" is defined as a nonstock, unincorporated organization made up of different member organizations that share profits, benefits, expenses and liabilities. Webster's Third New International Dictionary 1493 (1993).

**12.** A "governmental self-insurance group" is a group of two or more government employers, consisting of counties, municipal corporations, boards of education, and/or community colleges, organized under the provisions of Section 9–404 of the Labor and Employment Article, Maryland Code (1999), that self-insure. Maryland Code (1999), Sections 9–401(c) and 9–404 of the Labor and Employment Article.

PCIGC is limited in its functions to paying "covered claims" of insolvent insurers and assessing member insurers annual fees to cover the cost of its statutory duties.

Yanni, nonetheless, asserts that the late-payment penalties assessed against the PCIGC represent a portion of his "covered claim" to render it liable for those penalties. The PCIGC is only deemed the insurer "to the extent of the Corporation's obligation on the covered claims," and is *"not obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy out of which the claim arises."* Maryland Code (1995, 2003 Repl. Vol.), Section 9–306(c) of the Insurance Article (emphasis added). It is statutorily required to investigate all claims brought against the Corporation, settle and pay all covered claims, and deny all other claims not qualifying as "covered." Maryland Code (1995, 2003 Repl.Vol.), Sections 9–306(e)(1)(i) of the Insurance Article (emphasis added).

Covered claims are defined in Section 9–301(d) of the Insurance Article as:

[A]n insolvent insurer's unpaid obligation, including an unearned premium:

(i) that:

1. A. for insurance other than insurance that covers members of a purchasing group, *arises out of* a policy of the insolvent insurer issued to a resident or payable to a resident on behalf of an insured of the insolvent insurer; or

B. for insurance that covers members of a purchasing group, *arises out of* insurance that covers the members of the purchasing group to the extent that the insurance is obtained by the purchasing group, the insurance is written by an authorized insurer, and the claim is made by a person residing or located in the State; or

2. *arises out of* a surety bond issued by the insolvent insurer for the protection of a third party that is a resident.

Maryland Code (1995, 2003 Repl.Vol.), Section 9–301(d) of the Insurance Article (emphasis added). Covered claims do not include:

(i) an amount due a reinsurer, insurer, insurance pool, or underwriting association, as a subrogation recovery or otherwise; or

(ii) an amount due that arises out of insurance covering the members of a purchasing group if the insurance obtained by the purchasing group is written by an unauthorized insurer.

*Id.* Covered claims also do not include "a first party claim by an insured whose net worth exceeds $50,000,000 on December 31 of the year before the year in which the insurer becomes an insolvent insurer." *Id.*

This Court has repeatedly denied recovery against the PCIGC when a claim did not fall within the statutory definition of a "covered claim." In *Workmen's Compensation Commission v. Property and Casualty Insurance Guaranty Corporation, supra,* we held that assessments levied against insurers for the purpose of funding the Subsequent Injury Fund [13] ("SIF") and the UEF did not fall within the definition of "covered claims" that the PCIGC was statutorily obligated to pay after having emphasized that "covered claims" are defined as those which "arise out of" insurance policies of the insolvent insurer, we explicated that the SIF and UEF assessments do not "arise out of the insurance policy contracts of the insolvent insurer," but instead "are obligations arising wholly from statutes." *Id.* at 10–11, 570 A.2d at 327. *See also Md. Motor Truck Assoc. Workers' Comp. Self–Ins. Group v. Prop. & Cas. Ins. Guar. Corp.,* 386 Md. 88, 103, 871 A.2d 590, 598 (2005) (holding that the Maryland Motor Truck Association Workers' Compensation Self–Insurance Group could not recover from the PCIGC because the group constituted an

---

**13.** The Subsequent Injury Fund is a statutorily created fund that insures "that an employer who has hired a handicapped worker, will be subject to workers' compensation liability only for the effects of an injury which the worker suffers while in the employer' service, and not for the combined effects of the previous handicap and the subsequent injury." *Workmen's Comp. Comm.,* 319 Md. at 2, 570 A.2d at 323.

insurer, and Section 9–301(d)(2)(i) provides that "covered claim" does *not* include "an amount due to a reinsurer, insurer, insurance pool, or underwriting association, as a subrogation recovery or otherwise"); *Med. Mut. Liab. Ins. Soc'y of Md. v. Goldstein,* 388 Md. 299, 879 A.2d 1025 (2005) (holding that the PCIGC was not required to indemnify or defend a doctor in a contribution action because the doctor's claim was not presented to the PCIGC prior to the absolute and final bar date required by Section 9–301(d)(1)(ii), and therefore did not constitute a "covered claim"). *Cf. Ward Elec. Serv., Inc. v. Prop. & Cas. Ins. Guar. Corp.,* 325 Md. 1, 599 A.2d 81 (1991) (holding that the PCIGC could not pursue a claim for indemnity against insolvent insurer's insurer because the claimant the PCIGC had paid was not a resident of Maryland, and therefore the claim was not a "covered claim" and the PCIGC could not step into the insolvent insurer's shoes).

In the case before us, the penalties assessed against the PCIGC did not "arise out of" Legion's original workers' compensation insurance policy, but rather arose out of statutory obligations. Although the penalties were to be paid directly to Yanni, they are not part of the original claim amount, but, rather, constitute an additional payment, above and beyond the original claim award. Thus, based on the plain language of Section 9–301(d) of the Insurance Article, late fees assessed under Section 9–728 of the Labor and Employment Article do not constitute part of the "covered claim," and the PCIGC is not obligated to pay them. *See* Maryland Code (1995, 2003 Repl.Vol.), Section 9–306(a)(2) of the Insurance Article.

Although it is unnecessary for us to decide the other preserved issue of whether the PCIGC is immune from the assessment of fees in light of our determination that the PCIGC is not an "insurer" and that the penalties are not part of Yanni's "covered claim," we nonetheless shall reach the immunity issue because it raises an important issue; an issue which may continue to arise in the PCIGC's performance of its statutory duty to pay covered claims. This Court has discre-

tion to reach collateral, non-determinative, and even unpre-
served issues if they are deemed to be important issues of law
that are integral to our holding. *See Canaj, Inc. v. Baker &
Div. Phase III, LLC,* 391 Md. 374, 382, 893 A.2d 1067, 1072
(2006); *Messing v. Bank of Am., N.A.,* 373 Md. 672, 688, 821
A.2d 22, 31 (2003); *Md. Com'r of Labor & Indus. v. Cole
Roofing Co., Inc.,* 368 Md. 459, 479, 796 A.2d 63, 75 (2002);
*Richard Roeser Prof'l Builder, Inc. v. Anne Arundel County,*
368 Md. 294, 296, 793 A.2d 545, 547 (2002). *See also Anne
Arundel County Bd. of Educ. v. Norville,* 390 Md. 93, 104–05,
887 A.2d 1029, 1035–36 (2005); *Oak Crest Vill., Inc. v. Mur-
phy,* 379 Md. 229, 242, 841 A.2d 816, 824 (2004); *Eng'g Mgmt.
Serv., Inc. v. Md. State Highway Admin.,* 375 Md. 211, 235,
825 A.2d 966, 980 (2003); *Shurupoff v. Vockroth,* 372 Md. 639,
649, 814 A.2d 543, 549 (2003).

 Yanni urges us to hold that the PCIGC is not immune
from the assessment of late-payment penalties because such
immunity is inconsistent with the PCIGC's statutory purpose,
to ensure the prompt payment of covered claims and to avoid
financial loss to residents of the State who are claimants of an
insolvent insurer.

Section 9–314 of Insurance Article provides:

A member insurer, the Corporation or its agents or employ-
ees, the Board of Directors, and the Commissioners or the
Commissioner's representatives shall have the immunity
from liability described in § 5–412 of the Courts Article.

Maryland Code (1995, 2003 Repl.Vol.), Sections 9–314 of the
Insurance Article. Section 5–412 of the Courts and Judicial
Proceedings Article states:

There shall be *no liability* on the part of and no cause of
action of any nature shall arise against a member insurer,
the Property and Casualty Insurance Guaranty Corporation
or its agents or employees, the Board of Directors, or the
Insurance Commissioner or the Commissioner's representa-
tives for any action taken by them in the performance of
their powers and duties under Title 9, Subtitle 3 of the
Insurance Article.

Maryland Code (1974, 2002 Repl.Vol.), Section 5–412 of the Courts and Judicial Proceedings Article (emphasis added). Both Sections 9–314 of the Insurance Article and Section 5–412 of the Courts and Judicial Proceeding Article grant the PCIGC immunity from *liability* arising out of its performance of its statutory duties.

Liability is not defined in either the Insurance Article or Courts and Judicial Proceedings Article; nor is there any legislative history to shed light on the term. It is, however, defined in Black's Law Dictionary as a "legal responsibility to another or to society, enforceable by civil remedy or criminal punishment," and as "the opposite of *immunity.*" *Id.*, Black's Law Dictionary 932 (8th ed.2004), quoting William R. Anson, *Principles of the Law of Contract* 9 (Arthur L. Corbin ed., 3d Am. ed.1919) (emphasis added).

We explored the PCIGC's immunity from liability in *A.S. Abell Publishing Co.*, 297 Md. at 26, 464 A.2d at 1068, and determined that the Maryland Insurance Guaranty Association, the PCIGC's predecessor, was an agency or instrumentality of the State, such that it was required to disclose certain requested documents under the Public Information Act, and remanded the case for further proceedings. We held, however, that on remand, attorneys' fees and costs could not be awarded against MIGA under Section 5(b)(6) of Article 76A, the Public Information Act, Maryland Code (1957, 1980 Repl. Vol.).[14] We explained that,

> Ordinarily, a specific enactment prevails over an incompatible general enactment in the same or another statute.[15]

---

**14.** Section 5(b)(6) of Article 76A provides that:

> The court may assess against any defendant governmental entity or entities reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the court determines that the applicant has substantially prevailed.

Maryland Code (1957, 1980 Repl.Vol.), Article 76A, Section 5(b)(6).

**15.** *See Md.-Nat'l Capital Park and Planning Com'n v. Anderson*, 395 Md. 172, 194–95, 909 A.2d 694, 707 (2006) (stating that "[i]t is a well-settled rule of statutory interpretation that 'when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded

Additionally, Art. 48A, § 11 [16] specifically provides that the provisions of Article 48A shall prevail over other statutory provisions relating to insurance matters. Accordingly, Article 48A, § 517,[17] granting immunity from liability to MIGA and its agents, prevails over Article 76A, § 5(b)(6), permitting the assessment of attorney fees and costs in cases under the Public Information Act. Similarly, Article 48A, § 517 prevails over Md.Code (1974, 1980 Rep. Vol.), § 7–104(a)(1) and (2) of the Courts and Judicial Proceedings Article,[18] permitting the assessment of appellate costs

---

as an exception to the general statute'."). *See also Massey v. Sec'y, Dep't of Pub. Safety and Corr. Servs.,* 389 Md. 496, 512 n. 4, 886 A.2d 585, 594 n. 4 (2005), citing *Smack v. Dep't of Health and Mental Hygiene,* 378 Md. 298, 306, 835 A.2d 1175, 1179 (2003); *Harvey v. Marshall,* 389 Md. 243, 270, 884 A.2d 1171, 1187 (2005); *Farmers & Mer. Nat'l Bank of Hagerstown v. Schlossberg,* 306 Md. 48, 63, 507 A.2d 172, 180 (1986); *Lumbermen's Mut. Cas. Co. v. Ins. Comm'r,* 302 Md. 248, 268–69, 487 A.2d 271, 281 (1985).

16. Section 11 of Article 48A provided:

 Provisions of this article relative to a particular kind of insurance or a particular type of insurer or to a particular matter shall prevail over provisions relating to insurance in general or insurers in general or to such matter in general.

 Maryland Code (1957, 1980 Repl.Vol.), Article 48A, Section 11. Section 11 of Article 48A was recodified in 1995 without substantive changes as Section 1–207 of the Insurance Article. 1995 Md. Laws, Chap. 36.

17. Section 517 of Article 48A provided:

 There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer, the Association or its agents or employees, the board of directors, or the Commissioner of his representatives for any action taken by them in the performance of their powers and duties under this subtitle.

 Maryland Code (1957, 1979 Repl.Vol.), Section 517 of the Article 48A. Section 517 of Article 48A was recodified in 1990 without substantive changes as Section 5–336 of the Courts and Judicial Proceedings Article, 1990 Md. Laws, Chap. 546, and then renumbered to Section 5–412 in 1997. 1997 Md. Laws, Chap. 14.

18. Maryland Code (1974, 1980 Rep. Vol.), § 7–104(a)(1) and (2) of the Courts and Judicial Proceedings provided:

 (a) In general.—(1) Costs shall be allowed to or awarded against the State or one of its agencies or political subdivisions which is party to an appeal from an executive, administrative, or judicial decision, in

against a State agency. Under these circumstances, there shall be no allocation of appellate costs.

*Id.* at 40–41, 464 A.2d 1068 (citations omitted). Thus, we interpreted MIGA's immunity from *liability* to include immunity from costs, and concluded that the specific provisions of Section 517 of Article 48A, the predecessor to Section 5–412 of the Courts and Judicial Proceedings Article, prevailed over the provisions for the assessment of attorneys' fees and costs of the Public Information Act.

Although the PCIGC has been restructured so that it may no longer be considered an agency or instrumentality of the State,[19] the *Abell Publishing* rationale remains applicable. Thus, applying our jurisprudence in *Abell Publishing* to the case *sub judice,* the Property and Casualty Insurance Guaranty Corporation is immune under the specific provisions of Section 9–314 of the Insurance Article and Section 5–412 of the Courts and Judicial Proceedings Article, which prevail over the general penalty provisions of Section 9–728 of the Labor and Employment Article.

When faced with a similar issue, the Colorado Court of Appeals has reached the same conclusion. In *Mosley v. Industrial Claim Appeals Office,* 119 P.3d 576 (Colo.Ct.App. 2005), *cert. denied,* 2005 WL 2064906 (Colo.2005), the Colorado Court of Appeals explored whether the State's Insurance Guaranty Association's ("CIGA") immunity clause shielded it from paying late-payment penalties assessed under Section 8–

---

the same manner as costs are allowed to or awarded against a private litigant.

(2) The State, its agency, or the political subdivision shall pay the costs awarded against it.

**19.** In 1986, the General Assembly added subsection (b) to Section 9–314 of the Insurance Article, 1986 Md. Laws, Chap. 116, which provides:

Notwithstanding subsection (a) of this section, the Corporation is not any may not be deemed a department, unit, agency, or instrumentality of the State.

Maryland Code (1995, 2003 Repl.Vol.), Section 9–314 of the Insurance Article.

43–304(1) of the Colorado Workers' Compensation Act. CIGA's immunity statute provides:

> There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the board of directors, or the commissioner or his representatives for any action taken by them in the performance of their powers and duties under this part 5.

Colorado Revised Statutes (1971), Section 10–4–517. The court concluded that CIGA's immunity provision prevailed over the penalty provision of the Colorado Workers' Compensation Act because, following well-established rules of statutory interpretation, "to the extent there is any conflict between the two statutory provisions, § 10–4–517, as the more specific and later-enacted statute, controls." *Id.* at 579. The court further explained that,

> This interpretation of the statute furthers, rather than hampers, the legislative purpose of § 10–4–502, which is to avoid "excessive delay in payment and financial loss to claimants or policyholders because of the insolvency of an insurer." Indeed, the consequences of adopting claimant's statutory construction would be directly contrary to the purposes of the CIGA Act because requiring CIGA to pay penalties for post insolvency acts would result in *increased premiums for individual policyholders* and *depletion of CIGA funds to pay for covered claims* of all claimants whose insurers had become insolvent.

*Id.* at 580 (emphasis added).

In *Caulfield v. Leonard,* 676 So.2d 1117 (La.Ct.App.1996), the Louisiana Court of Appeals reached a similar conclusion when it was called upon to also address the issue of whether the Louisiana Insurance Guaranty Association's ("LIGA") was immune from late-payment penalties under Section 12:1220(B)(2) of the Louisiana Revised Statutes Annotated. Section 12:1220 provides:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good

faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly. . . . Any insurer who breaches these duties *shall be liable for any damages sustained as a result of the breach.*

B. Any of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed by Subsection a:

\* \* \*

(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

\* \* \*

C. *In addition to any general or special damages* to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. . . .

\* \* \*

F. The Insurance Guaranty Association Fund . . . shall not be liable for any *special damages* awarded under the provisions of this Section.

*Id.* at 1119, quoting Louisiana Revised Statutes Annotated 22:1120 (1990) (emphasis added). Section 12:1391 of the Louisiana Insurance Code, LIGA's immunity provision, states:

There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer, the association or its agents or employees, the board of directors, or the commissioner or his representatives for any action taken by them in the performance of their powers and duties under this Part.

Louisiana Revised Statutes Annotated 12:1391 (1970, 1991 Repl. Vol.). The Louisiana court harmonized the penalties provision of Section 12:1220(B)(2) of the Insurance Code with the immunity provisions of Section 12:1391, stating:

La.R.S. 22:1220(F) specifically provides that LIGA is immune from an assessment of special damages. In light of LIGA's broad grant of immunity under La.R.S. 22:1391,

La.R.S. 22:1220(F) cannot be read, by implication, as allowing the imposition of general damages and/or penalties thereunder.

*Id.* at 1120. The court noted that, "to expose LIGA [to penalties] could potentially threaten the very existence of the insurance guaranty fund which has as its avowed statutory purpose the avoidance of excessive delay in payment and the avoidance of financial loss to claimants or policyholders." *Id.* at 1120. The court therefore held that LIGA is not liable for penalties in failing to timely pay claims.

Yanni urges us to adopt the Rhode Island Supreme Court's holding in *Callaghan v. Rhode Island Occupational Info. Coordinating Comm./Indus. Educ.*, 704 A.2d 740 (R.I.1997), which upheld a late-payment penalty against the state's insurer's insolvency fund, despite the fund's immunity against liability, on the ground that the penalty ensured that the fund discharged its obligations in a timely manner. Yanni argues that this approach provides the only remedy for claimants whose award has not been timely paid.

In *Callaghan*, the Supreme Court of Rhode Island addressed whether the Rhode Island Insurer's Insolvency Fund ("RIIIF"), which mirrors Maryland's PCIGC, was susceptible to the assessment of late-payment penalties under Section 28–33–17(f)(5) of the Rhode Island Workers' Compensation Act for the RIIIF's late payment of cost-of-living adjustments to Callaghan's workers' compensation award. Section 27–34–16 of the General Laws of Rhode Island provides:

there shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the fund, or its agents or employees, the board of directors, or the commissioner or his or her representative for any action taken or not taken by them in the performance of their powers and duties under this chapter.

Rhode Island General Laws (1956, 1988 Repl.Vol.), Section 27–34–16. The Rhode Island Court defined liability as " 'a broad legal term ... [that] has been referred to as of the most comprehensive significance, including almost every character

of hazard or responsibility, absolute, contingent, or likely,' " and determined that the RIIIF"s immunity statute could not be given such a broad application because it would abrogate the fund's obligation to pay the penalties. *Callaghan*, 704 A.2d at 747. The court reasoned that, to give the RIIIF such broad immunity

> would contravene the legislative purpose behind the [RIIIF] Act, namely to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer.

*Id.* In addition to being a minority view, the Rhode Island opinion is distinguishable from our jurisprudence because the opinion did not explore whether there exists an alternative remedy to the enforcement of the timely payment of insolvent insurer's covered claims, which could include the filing a complaint with the State insurance commissioner.

We explored the authority of the Insurance Commissioner with regard to the PCIGC in *Insurance Commissioner of State v. Property and Casualty Insurance Guaranty* Corporation, 313 Md. at 522–23, 546 A.2d at 460, in which claimants sought payment of their Personal Injury Protection ("PIP") claims from the PCIGC when their insurance provider became insolvent. The PCIGC contended that the claims were not "covered claims" and refused to pay them. The Insurance Commissioner disagreed and ordered the PCIGC to pay them. We affirmed the authority of the Commissioner, stating that, under certain circumstances, the Commissioner retained the authority to order an insurer to pay a claim, citing to specific statutory provisions of the Insurance Article:

> Section 55(2) [20] provides: "[t]he Commissioner may refuse to issue or after a hearing refuse to renew, or may

---

**20.** Section 55(2) of Article 48A was recodified in 1995 as Section 4–113(b) of the Insurance Article, 1995 Md. Laws, Chap. 36, which provides:

revoke or suspend an insurer's certificate of authority, in addition to other grounds therefor in this article, if the insurer: (i) Violates any provision of this article other than those as to which refusal, suspension or revocation is mandatory.... (iv) Without just cause unreasonably refuses or delays payment to claimants of the amount due them." Section 55A [21] provides: "In lieu of or in addition to revocation or suspension of an insurer's certificate of authority the Commissioner may ... (2) require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation."

*Id.* at 527–28, 546 A.2d at 462–63. Thus, we held that, because the PCIGC stands in the shoes of the insurer with regard to covered claims, and it had violated the Insurance Article by failing to pay a covered claim, it was "therefore subject to the Commissioner's powers under §§ 55(2)(i) and 55A." *Id.* at 527, 546 A.2d at 462.

Thus, a remedy afforded to Yanni in his pursuit of the prompt payment of his "covered claim" was to have filed a complaint with the Insurance Commissioner at the expiration of the fifteen-day payment period. The Commissioner would then have had the opportunity to investigate the claim and

---

The Commissioner shall deny a certificate of authority to an applicant or; subject to the hearing provisions of Title 2 of this article, refuse to renew, suspend, or revoke a certificate of authority if the applicant or holder of the certificate of authority: (1) violates any provision of this article other than one that provides for mandatory denial, refusal to renew, suspension, or revocation for its violation.

\* \* \*

(5) refuses or delays payment of amounts due claimants without just cause.

21. Section 55A of Article 48A was recodified in 1995 Section 4–113(d) of the Insurance Article, 1995 Md. Laws, Chap. 36, which provides: Instead of or in addition to suspending or revoking a certificate of authority, the Commissioner may:

\* \* \*

(2) require the holder to make restitution to any person who has suffered financial injury because of the violation of this article.

intervene on Yanni's behalf. This option explored in our jurisprudence was not explored by the Rhode Island court.

We, therefore, hold that the penalties should not have been assessed against the PCIGC because it is not an "insurer" for purposes of Section 9–728 of the Labor and Employment Article. We also hold that the PCIGC is not obligated to pay the late-payment penalties because the penalties do not fit within the statutory definition of "covered claims" of Section 9–301(d) of the Insurance Article. Further, even if the PCIGC were an "insurer," and the penalties were part of the "covered claim," it is immune from the assessment of late-payment penalties under the provisions of Section 9–314(a) of the Insurance Article and Section 5–412 of the Courts and Judicial Proceedings Article. Thus, we reverse summary judgment for Yanni and remand to the Circuit Court for Montgomery County for the entry of summary judgment for PCIGC. *See Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 317, 841 A.2d 858, 868 (2004); *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 318, 753 A.2d 533, 544 (2000).

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO GRANT APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND TO DENY APPELLEE'S CROSS–MOTION FOR ENTRY OF SUMMARY JUDGMENT. COSTS TO BE PAID BY APPELLEE.**

HARRELL, J., joins in the judgment as to the immunity issue only.

BELL, C.J. and WILNER, J., Dissent.

In May, 2003, Peter Yanni filed a workers' compensation claim against his employer, MTI Corporation, and its insurer, Legion Insurance Company. Two months later, in July, 2003, Legion became insolvent, and appellant, Property and Casualty Insurance Guaranty Corporation (PCIGC), accepted the claim as a "covered" claim.

On September 29, 2004, the Workers' Compensation Commission entered an award directing MTI and Legion, the actual parties to the proceeding, to pay temporary total and permanent partial disability benefits to Yanni, and an attorney's fee to his attorney. Because Legion was insolvent, PCIGC had a statutory obligation under Maryland Code, § 9–306 of the Insurance Article (INS) and § 9–727 of the Labor and Employment Article (LE), to commence payment of that award within fifteen days after its entry. It failed to do so, prompting a request by Yanni and his attorney for penalties allowable under LE § 9–728. After two false starts, the Commission found that penalties were appropriate and that PCIGC was liable for the penalties, and it therefore assessed them against PCIGC. The Circuit Court for Montgomery County, on PCIGC's action for judicial review, entered summary judgment affirming the Commission order.

Though acknowledging its responsibility to pay covered claims made against an insolvent insurer within fifteen days after entry of the award, its failure to discharge that responsibility, and the authority of the Commission to award penalties for non-conformance with that obligation, PCIGC nonetheless contends that no such penalties may be awarded against it because (1) it is not an insurer, (2) a penalty assessed under LE § 9–728 does not constitute a "covered claim" for which it is liable, and (3) even if it *is* an insurer and the penalty *is* a "covered claim," it has statutory immunity against liability. The Court proposes to find merit in all three of those defenses. With respect, I dissent. None of them has merit, for if any of them did, the statute directly placing on PCIGC the obligation to pay Workers' Compensation awards issued against insolvent insurers would be rendered largely toothless.

The issue here, as framed by PCIGC, is entirely one of statutory interpretation. Our goal, therefore, is to implement, not find a way to frustrate, the legislative intent. Citing INS § 9–302, the Court acknowledges that PCIGC's statutory purpose is "to provide a mechanism for the *prompt* payment of covered claims under certain [insurance] policies and to avoid financial loss to residents of the State who are claimants or

policyholders of an insolvent insurer." (Emphasis added). That, within the bounds of the law, is what the Court should strive to do.

### Is PCIGC An Insurer?

Relying on *Uninsured Employers' v. Danner*, 388 Md. 649, 882 A.2d 271 (2005) and a few out-of-State cases, the Court first holds that, despite a clear, unambiguous statutory provision to the contrary, PCIGC is not an insurer. In my view, *Danner* is distinguishable and the out-of-State cases do not accurately reflect the intent of the Maryland General Assembly.

Like Mr. Yanni, Gerald Danner suffered a compensable accidental injury, filed a claim for workers' compensation benefits, and received an award. Unlike this case, however, his employer did not carry workers' compensation insurance and made no payments on the award. Danner therefore requested payment from the Uninsured Employer's Fund (UEF), which denied the request. The Workers' Compensation Commission thereafter ordered the Fund to pay the award, as well as a penalty and attorney's fee. On judicial review, we upheld the order to pay the benefits under the award but reversed the order to pay the penalty and attorney's fee.

We are not concerned here with the discussion regarding the Fund's obligation to pay the basic benefits provided for in the award, but rather the reason why we held that the Fund was not liable for the penalty. That also was a matter of statutory construction. LE § 9–728—the statute that allows the Commission to assess penalties for late payment of awards—permits the Commission to assess a penalty if it finds that "an employer *or its insurer*" has failed, without good cause, to begin paying an award within the time allotted. (Emphasis added). The Fund was certainly not Danner's employer; the question was whether it qualified as the employer's insurer.

The term "insurer" is not defined in § 9–728 or, indeed, anywhere in subtitle 7 of title 9. In the absence of any directly controlling statute, we looked to two other sections of the Workers' Compensation Law—LE § 9–401(b) and LE § 9–316(a)(3). Section 9–401(b), which is part of the subtitle dealing with the requirement of insurance coverage, defines "authorized insurer" as a stock corporation or mutual insurer that is authorized to provide workers' compensation insurance in the State, a governmental self-insurance group, a self-insurance group of private employers that meets certain statutory requirements, or an individual employer that self-insures in conformance with LE § 9–405. Section 9–316(a)(3), which permits the Commission to collect a tax from insurers to defray the expenses of the Commission, defines "insurer" for that purpose in much the same way as § 9–401(b). The UEF, we held, did not fit within either of those definitions, and we therefore concluded, in the absence of any other statute that might bring it within the ambit of an insurer, it could not be considered one. Because it was neither an employer nor an insurer, it was not an entity against which a penalty could be assessed under LE § 9–728.

In marked contrast to the situation with respect to UEF, PCIGC *is* defined as an insurer, for the very purpose at issue here. PCIGC is created and its duties are defined in title 9, subtitle 3 of the Insurance Article. Title 9 deals with impaired insurance entities; subtitle 3 provides for PCIGC. Unlike UEF, PCIGC is a private corporation, not a State agency. INS § 9–306(a) provides that, except as to surety bonds, PCIGC is obligated to the extent of covered claims existing on or before the determination of insolvency and, within certain dollar limits, requires it to "pay the full amount of any covered claim arising out of a workers' compensation policy." Of particular relevance and, to me, of governing importance in this regard, § 9–306(c) provides that:

"[PCIGC] shall be deemed the insurer to the extent of the Corporation's obligation on the covered claims and, to that extent, *shall have the* rights, *duties, and obligations* that

the insolvent insurer would have had if the insurer had not become insolvent."

(Emphasis added).

Unlike the situation in *Danner*, we do not need to go hunting for definitions of "insurer" in other parts of the Labor and Employment Article that have nothing directly to do with PCIGC to determine whether PCIGC falls within them. The statute that creates PCIGC and sets forth its functions and obligations makes it an "insurer" for this very purpose and expressly imposes on it the duties and obligations that the insolvent insurer (Legion) would have had if it had not become insolvent. That, alone, renders the holding in *Danner* and the analysis underlying that holding inapposite. To the extent that the penalty assessed by the Commission constitutes part of a "covered claim," PCIGC clearly is an insurer and therefore falls within the ambit of LE § 9–728. None of the out-of-State cases relied upon by the Court dictate a different result.

### *Covered Claim*

The Court seeks to avoid the otherwise unambiguous application of INS § 9–306(c) by concluding that a penalty assessed pursuant to LE § 9–728 does not constitute a "covered claim." It notes that INS § 9–301(d), in relevant part, defines "covered claim" as "an insolvent insurer's unpaid obligation" that "arises out of a policy of the insolvent insurer issued to a resident or payable to a resident on behalf of an insured of the insolvent insurer." It then concludes that penalties assessed by the Commission under LE § 9–728 are statutory in nature and do not arise out of a policy of the insolvent insurer and, for that reason, do not constitute "covered claims."

That, to me, is an unduly narrow construction that is wholly inconsistent with the legislative intent and, indeed, the whole purpose of PCIGC. PCIGC stands in the shoes of the insolvent insurer and is obligated to pay claims that, but for its insolvency, the employer's insurer would be obligated under its policy to pay. As this Court has confirmed on a number of occasions, "Maryland adheres to the general rule that parties to a contract are presumed to contract mindful of the existing

law and that all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident." *Wright v. Commercial & Sav. Bank,* 297 Md. 148, 153, 464 A.2d 1080, 1083 (1983); *Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 344, 731 A.2d 441, 447 (1999); *Lema v. Bank of America,* 375 Md. 625, 645, 826 A.2d 504, 516 (2003). That includes, in this instance, the requirement in LE § 9–727 that insurers commence payment of awards within fifteen days, and, in my view, it would also include the obligation to pay any penalty assessed under LE § 9–728 on account of the insurer's failure to do so.

The penalty provision in § 9–728 is not in the nature of an insurance regulation. It cannot be, because the Workers' Compensation Commission has no authority to regulate insurance companies. It is, rather, a mechanism to enforce an obligation that all workers' compensation insurers have under their policies to pay awards promptly and is, by law, incorporated into every workers' compensation insurance policy. Viewed in that light, a penalty assessed for an insurer's failure to comply with its policy obligations, even though assessed pursuant to statute, must also be regarded as arising from the policy.

It is thus clear to me that Legion was obligated *under its policy* to pay both the award made to Mr. Yanni in accordance with LE § 9–727, and any penalties assessed under LE § 9–728 by reason of its failure to do so. Because its liability for the penalty arises solely from its status as an insurer, it necessarily must arise "out of a policy of the insolvent insurer." That makes it a covered claim, for which, in light of Legion's insolvency, PCIGC is liable.

This conclusion is not just a matter of construing the words of the statutes in a proper relational way. It goes to the heart of the statutory scheme. There are only two purposes for requiring employers to be insured—to assure payment of awards to injured workers and to protect employers from insolvency by reason of such awards. That is reflected in INS

§ 9–302, which states the purpose of subtitle 3 as being "to provide a mechanism for *the prompt* payment of covered claims . . . and to avoid financial loss to residents of the State who are claimants or policyholders of an insolvent insurer." If PCIGC were free to ignore Commission awards with impunity—without being subject to the penalties allowed under LE § 9–728—that statutory purpose would remain in serious jeopardy. It is of some importance that, although PCIGC is obligated to pay covered claims arising under a wide variety of casualty insurance policies, the Legislature saw fit, in INS § 9–306(a)(3), to specify, in particular, PCIGC's obligation to pay the full amount of covered claims arising out of a workers' compensation policy.

### *Immunity*

As the third prong of its holding, the Court determines that, even if PCIGC were an insurer and even if a penalty assessed under LE § 9–728 constitutes a covered claim, PCIGC is immune from such an assessment under Maryland Code, § 5–412 of the Cts. & Jud. Proc. Article (CJP), which provides:

"There shall be no liability on the part of and no cause of action of any nature shall arise against a member insurer, [PCIGC] or its agents or employees, the Board of Directors, or the Insurance Commissioner or the Commissioner's representatives for any action taken by them in the performance of their powers and duties under Title 9, Subtitle 3 of the Insurance Article."

In holding that the immunity provided under that section precludes the assessment of penalties against PCIGC, and thus allows it to thumb its corporate nose at its statutory obligation, the Court relies on *A.S. Abell Pub. Co. v. Mezzanote*, 297 Md. 26, 464 A.2d 1068 (1983). The principal issue in that case was whether the Maryland Insurance Guaranty Association—a precursor of PCIGC—was a State agency for purposes of the Public Information Act. A newspaper had filed a PIA request to inspect certain records of the Association, which was denied on the ground that the Association was not a State agency. The Circuit Court agreed. We concluded that

the Association was a State agency that was subject to the PIA and remanded the case to the Circuit Court for further proceedings. In doing so, we concluded that, in light of the predecessor statute to CJP § 5–412, the Association would not be liable for costs or attorneys' fees that otherwise might be assessed under the PIA.

That is a far different situation than what we have here. As noted CJP § 5–412 provides immunity "for any action taken by [PCIGC or its members, directors, employees, or agents, or the Insurance Commissioner] in the performance of their powers and duties under Title 9, Subtitle 3 of the Insurance Article." A corporate decision by a hybrid guaranty entity created by statute, presumably on the advice of counsel, that it is not a State agency and therefore is not subject to the PIA may well be regarded as one that, even if later proved wrong, was nonetheless taken in the performance of its corporate powers and duties. A decision not to pay a covered claim in conformance with a clear statutory mandate is *not* one taken in the performance of its powers and duties. PCIGC has no power or duty not to pay a covered claim for which it is legally responsible. Failure to pay is not the *performance* of its duties but an unlawful defiance and disregard of them.

To apply the immunity accorded in CJP § 5–412 to LE § 9–728 would be equivalent to having the tail wag the dog, for, read literally in that context, it would preclude any liability on the part of PCIGC for refusing to pay the very claims it was created to pay. The implication of such a broad reading of CJP § 5–412 is the substantial risk of leaving claimants without a source for the payment and employers subject to a liability that they may be incapable of discharging.

The Court suggests that the solution to any default by PCIGC in its obligation to pay awards entered by the Workers' Compensation Commission in conformance with LE § 9–727 is for the claimant (or employer) to file a complaint with the Insurance Commissioner. Citing *Insurance Com'r v. Prop. & Cas. Ins. Guar. Corp.*, 313 Md. 518, 546 A.2d 458 (1988), the Court observes that the Commissioner is empow-

ered to order PCIGC to pay a disputed claim. That is true, but it is hardly an exclusive, or even a practical remedy. That case involved a dispute over whether PCIGC was responsible for paying personal injury protection claims arising under automobile insurance policies issued by insurers that had become insolvent. The issue was purely a legal, and generic, one of whether liability existed for any such claim. The Commissioner ordered PCIGC to pay the claims and, when it refused, the Commissioner, after an administrative hearing, again ordered it to pay the claims.

The issue here is not whether PCIGC has legal liability for a class of claims. It recognized its obligation to pay Mr. Yanni's award, and it has never contested that the payment of awards must commence within fifteen days. For whatever reason, it simply failed to comply with its obligation. To require the claimant, who needs the money immediately and who, by law, is entitled to it within fifteen days, to file a complaint with the Insurance Commissioner, who knows none of the underlying facts, and go through a contested case administrative hearing, with the further prospect of judicial review in a Circuit Court, simply to have another agency do what the Workers' Compensation Commission has already done, namely, order PCIGC to pay the award, makes utterly no sense. That cannot be what the General Assembly intended.

For these reasons, I would affirm the judgment of the Circuit Court.

Chief Judge BELL authorizes me to state that he joins in the dissent.